# George McGowan *v.* Lincoln Park & Steamboat Consolidated Company, Appellant.

*Corporations—Liability for action of board of directors—Compensation of the president.*

Where the directors of a corporation, on March 16, 1893, by resolution, voted " that the salary of the President of this Company be fixed at $5,500 per year, salary to date from January 1, 1891," and the company thereafter constantly recognized its liability therefor, and the fact is undisputed that the salary prior to the date of the resolution was appropriated to the use of the company, according to an understanding of the president and directors had at the time the resolution was passed, the president will be entitled to recover from the company the salary which accrues subsequent to the date of the resolution.

*Corporations—Minutes of board of directors—Understanding of individual directors—Evidence.*

In a suit against a corporation the minutes of the board of directors are conclusive against it, and testimony is inadmissible on its behalf to prove that certain individual directors understood that the corporation was not to be bound by the resolution as written.

Argued March 24, 1897. Appeal, No. 9, Jan. T., 1897, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1895, No. 60, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover salary as president of a corporation.
Before FINLETTER, P. J.

At the trial it appeared that on March 16, 1893, the directors
of the Lincoln Park & Steamboat Consolidated Company passed
the following resolution:

"It was moved by Mr. Benton, seconded by Mr. Klemmer,
that the salary of the President of this Company be fixed at
$5,500 per year, salary to date from January 1, 1891."

The plaintiff who was president of the company claimed to
recover salary from March 16, 1893.

The material facts appear from the following part of the
charge of the court:

[It is the duty of this, and of every board of managers, to see
that they have faithful officers—it being their duty to take
charge of the business of the company; it devolved upon every
one of the directors to know exactly the details of its business,
and they are bound, individually and collectively, for all that
appears in the books, and for all that appears in the minutes of
the board, which is the history of the details of the business.]
[2] No director can be permitted to say that he does not recol-
lect that anything in which he took part, did or did not occur.
He is presumed to know and to have faithfully performed his
duties, and if he does not, then he is not permitted to say, either
in defense of his own conduct or in opposition to the rights of
other people, that he has neglected his duty.    The law presumes
that he knows all that he ought to know, and that he has acted
accordingly.    Whilst it may be a very great hardship, in all
cases, to expect the individual members of a board of directors,
having very extensive ramifications of business, to know all the
details of the business, yet they have no right to complain of
such a hardship, because the moment a director finds that, for
any reason, he cannot perform all of his duty, it is his duty to
the stockholders, for whom he is trustee, to resign the office
which he cannot honestly, faithfully and efficiently fill.    While
we may consider a little laxness, so far as the large business of
the corporation is concerned, certainly, no individual member
of a board of directors has a right to complain and say that he
does not recollect the business which he himself performed.
[It is presumed that the board of directors shall have thorough,

complete and full knowledge of all the business which they themselves have transacted, and, therefore, it is that the minutes of a board of directors which, after all, is simply the history and account of what they themselves have done, are conclusive against everybody connected with the corporation—conclusive against the stockholders as owners of the corporation, and conclusive against the board in its individual or collective capacity.] [3] We all know exactly how the minutes of any board of directors are kept. They are noted by the proper officer as they occur. If any business is to be performed, a motion or resolution is offered and acted upon by the board. If a majority of the board or a majority of the number sufficient to do business adopt it, then the motion or resolution is passed, and the secretary carefully prepares the minutes, and at the next meeting of the board reads them, and if any mistake has been made, if there be any objection because of any error in the account of the report of the business, it is the duty of the board and its individual members to have that, at the very time, corrected, and if that is not done it stands then as the act of the corporation, confirmed by the board itself.

[In this case the minutes of the board of directors have been produced, and they have been read to you. I have only to say that every word of those minutes is binding upon the defendant, and it is also binding upon the plaintiff in this case, so far as he was acting as the president of this company.] [4] [As I understand it, the president of this company, from its organization, for two years, acted without any fixed salary. Unless there was an agreement on his part with them, an implied or positive agreement, that he should not receive a salary, he would be entitled to a reasonable compensation for his services during the two years in which he acted without any fixed salary. It may not be said here or anywhere that a man shall give his time and ability and act as the manager of a corporation, and yet, because no salary was fixed, he should not receive any salary.] [1] However, that is not the question in this case. It appears that at the expiration of two years, owing to a certain difficulty which the company had in borrowing money, it was necessary that $11,000 should be raised outside of the regular business of the corporation. In other words, it was considered to be illegal for the corporation to pay $11,000 as commission

upon the loan of $110,000. So that there was this necessity—the company had either to make up the $11,000 individually, or forego the advantage of having the $90,000 or $100,000 coming to them under this loan. Therefore it was a matter of interest that this board and its president should in some way overcome the difficulty which might perhaps prevent the performance of the general business of the company, and it might have been ruinous to the company.

At that time, as I understand it, the president suggested that the only way they could legally arrive at a solution of the difficulty was that they should fix his salary—it had not been fixed previously—but if it was fixed at $5,500 a year, to date from the commencement of his term of office, and if he appropriated that $11,000 to the payment of the commission, the company would derive the advantage from the loan. There is no doubt that that was agreed to at that time; there is no doubt that the salary was fixed to run during a certain time, and it was fixed specifically and definitely; and there is no doubt that the money was appropriated to a proper purpose. From the general tenor of the minutes of the board, and from the resolutions passed from time to time, the plaintiff in this case might have set up a claim for the entire four years' service, but he himself has said that he did not intend that he should be benefited except in the way suggested, and therefore his own testimony precludes him from any attempt to collect the salary for the first two years, or from claiming any compensation for that time. He himself fixed it at $5,500 per year, which is $2,750 per year for the four years. As I understand it, he now claims to be entitled to receive $5,500 per year for the third and fourth years only. This does not appear to be an extravagant claim for the presidency of such a company, exercising and performing the duties he has described.

[What is the defense in this case? It is that the salary was to apply only to the first two years. Don't you see how easy it would have been for the board of directors to have said that the $5,500 per year shall be for the first and second years. and there it would have stopped. If the contention of the defendants, in any sense, is correct, there would be no controversy, and the plaintiff in this case would either have acted as president thereafter, or would have resigned. I say, how easy that

could have been done; and the inference may be drawn from the fact that the board did not put that in its resolution because no such thing was contemplated, but the board at that time contemplated compensating him for his four years' services, which would be $11,000 for four years.] [5]   In addition to that is the fact that it appears that at the beginning of the third year of the fixed salary, under which he might have claimed the entire four years, except for his explanation, one or two of the directors—one of whom did not seem to pay much attention to his duty—and who were the custodians and trustees of the property of the stockholders, say that they understood that the money was not to be paid to him.   But before you can deprive a man of his legal rights, there should at least be evidence that it was the intention of the president and the board of directors, at the time the action was taken, that he should not receive a salary. Now, how does that appear from the minutes?  They were read to you.   The plaintiff's salary is spoken of as a fixed sum in a number of cases, recognized by the board in its resolution and in their conversation—recognized in every way.   [Therefore you have, in addition to the presumption of law, that the minutes are truthful, and ought to be binding upon everybody, but a vague and uncertain impression of two or three of the directors, who say that they thought that this applied to the first two years only.] [6]   [If they have satisfied you that it did only apply to the first two years, then your verdict should be for the defendants.   But when you consider the nature of his duties, and the time and attention he gave to them, and the manner in which these resolutions were passed from time to time, the jury ought to be controlled by the resolution of the board of directors, rather than by the vague and uncertain recollection of one or two or three directors.] [7]

It appears that at a certain time, the plaintiff was willing to compromise with the defendant for $4,750; and if they had complied with that—if they had given him an acknowledgment of the indebtedness, and said that they would pay him that amount of money, then, the plaintiff would have no right to bring suit for more than $4,750, because the right is given to all persons to settle their matters of salary in their own special way; and if the plaintiff at any time was willing to take $4,750, and they were willing to give it to him, and acted upon that and author-

ized it, then, it was their duty to comply with that compromise. If they did not perform their part of the compromise, then they have no right to say that his claim must now be fixed at that amount, because he at one time offered to take it. [That would not prevent him recovering the entire amount of his salary at the rate of $5,500 a year, for the time he agreed to serve, and did serve as president of the corporation.] [8]

Verdict and judgment for plaintiff for $9,168.50. Defendant appealed.

*Errors assigned* were (1–8) above instructions, quoting them; (9) that the charge as a whole was inadequate and misleading.

*John F. Lewis* and *Hampton L. Carson*, with them *Edward G. McCollin*, for appellant.—The charge of the court to the jury is objectionable as an entirety. It was not such an impartial review of the facts, nor was it such a statement of the law, as the case should have received: Heydrick v. Hutchinson, 165 Pa. 208; Pierson v. Duncan, 162 Pa. 187; Reichenbach v. Rud dach, 127 Pa. 564; Lerch v. Bard, 177 Pa. 197.

The English rule excluding parol evidence to vary a written contract has not been adopted in this state in all stringency, and the evidence in behalf of the defendant explained, rather than varied, the minute, and was entitled to proper consideration from court and jury: Furniture Co. v. School District, 158 Pa. 35; Greenawalt v. Kohne, 85 Pa. 369; Gearhart v. Dixon, 1 Pa. 224; Bank of the United States v. Dandridge, 12 Wheaton, 64; Magill v. Kauffman, 4 S. & R. 317; Heintzelman v. Druids' Relief Assn., 38 Minn. 138; Goodwin v. United States Annuity & Life Ins. Co., 24 Conn. 591.

When an officer of a corporation performs the usual and ordinary duties of his office, as defined by the charter or by-laws, he cannot recover compensation therefor unless it has been so specially agreed: Citizens' Nat. Bank v. Elliott, 55 Iowa, 104; Loan Assn. v. Stonemetz, 29 Pa. 534; Kilpatrick v. Penrose Bridge Co., 49 Pa. 118; Martindale v. Wilson-Cass Co., 134 Pa. 348; Bagaley v. Pittsburg, etc., Iron Co., 146 Pa. 478.

*John G. Johnson*, with him *M. J. Ryan*, for appellee.

PER CURIAM, April 19, 1897 :

If the plaintiff's claim covered the two years prior to the resolution of March 16, 1893, there would be much force in the contention of the defendant that past services could not be paid for in that way. But the resolution was general in its terms and most clearly applied to future services, as well as past. In this case there is no claim for services during the first two years, and the evidence is simply overwhelming that for the subsequent time the defendant company constantly recognized its liability. There was therefore no legal difficulty in the way of recovery for the time subsequent to March 16, 1893. The facts were submitted to the jury in a fair and impartial charge, and the verdict was in accordance with the weight of the testimony in favor of the plaintiff. The assignments of error are all dismissed.

Judgment affirmed.