# Sotter et al., Appellants, *v.* Coatesville Boiler Works et al.

*Corporations—Directors—Directors acting as officers—Compensation—Alleged fraud—Ratification—Equity—Contracts—Resolution by corporation.*

1. The directors of a corporation have the right to serve the company in the capacity of officers or employees and to receive compensation for such services, if legally employed by the company.

2. Directors of a corporation may contract with agents or employees of their corporation who are likewise directors and, though always subject to close scrutiny and voidable for fraud or overreaching, such contracts are not ipso facto void, but will be sustained if for a fair and reasonable consideration.

3. Where a board of directors votes excessive salaries to certain of its members who are also officers or employees of the corporation, even though such action may subsequently be ratified at a stockholders' meeting, the action of the board, when called into question by a minority stockholder, is subject to review by a court of equity and, if the finding of the latter tribunal is that the salaries in question are exorbitant, it may determine the value of the services rendered by the officers or employees in question and restrain the corporation from paying in excess thereof.

4. While a corporation which has voted salaries to its officers or employees may be restrained from paying any sums on account of the amount voted in excess of what the court shall deem to be reasonable, the court has no power to restrain the payment of such salaries in future years when the circumstances may change.

5. A manufacturing corporation, having seven directors, voted salaries to three of its executive officers who were also directors at $400 per month each. Each of these officers performed special services to the company which were valuable and resulted in financial success. Such officers had threatened to resign and the directors voted to give them from year to year, in addition to their salaries, 50% of the annual net gain on the stock of the company after the regular 8% dividend had been set aside, and gave extra annual compensation to certain employees who were not parties to the suit. The directors interested voted for the resolution. The action of the directors was ratified by a large majority vote at a stockholders' meeting. A dissenting stockholder who had voted against the ratification brought a bill in equity to restrain the directors of the corporation from paying the additional bonus to the directors. The

lower court found that $12,000 per annum was reasonable compensation for each of the three officers' services, and restrained defendants from making full payment under the directors' resolution, but allowed two of the defendants each one-third of 50% of the net profits of the current year in addition to $12,000, in order to compensate them for their failure to receive $12,000 per annum in previous years, but restrained defendant corporation from paying to such officers more than $12,000 per annum in future years. The finding as to the proper compensation of the directors for the current year was not assigned as error. *Held,* that the payments to the directors for the current year should be limited to the amount found reasonable by the court and could not include compensation for passed years; that the court was not justified under the facts in prohibiting payment of any extra compensation to the third officer and three employees who were not parties; and had no authority to enjoin payments in future years when the circumstances might change; and the record was remitted with directions to modify the decree.

6. Exceptional cases may arise where, contemplating a continuance of an ascertained state of facts, and guarding their decree accordingly, judicial tribunals may determine compensation to be paid in the future, but there is nothing in the case at bar to take it out of the general rule.

7. Where a corporation by resolution fixes extra compensation for its officers, no formal contract is required to be entered into between the corporation and the officers to fix the liability of the corporation for payment; such a resolution when acted upon is in itself sufficient evidence of the fixed understanding between the corporation and its employees.

Argued Feb. 5, 1917. Appeal, No. 174, Jan. T., 1916, by plaintiffs, from decree of C. P. Chester County, Sept. T., 1915, No. 616, in equity, awarding an injunction, in case of Frederick Sotter, A. Mary Shallcross and Catharine W. Shallcross v. Coatesville Boiler Works, Charles Edgerton, Nelson H. Genung and H. Blanche D. Moore, W. Park Moore and Fred E. Moore, Executors of the Estate of Edwin T. Moore, Deceased. Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and WALLING, JJ. Modified and remitted.

Bill in equity for an injunction. Before BUTLER, P. J. The opinion of the Supreme Court states the facts.

The court below entered the following decree:

"The Coatesville Boiler Works, one of the defendants, and all of its agencies are restrained from making any payment under its directors' resolution of November 7, 1904, subsequently ratified by its stockholders, of any part of its net profit of $102,456.60 for the fiscal year ending in 1915, to Fred E. Moore; and this fund will not be depleted, by virtue of the recited resolution and its ratification, beyond the payment of one-third of 50% of it to Charles Edgerton and one-third of 50% of it to Nelson H. Genung. Annually hereafter, out of the so-called net profits, the Coatesville Boiler Works is restrained from paying to Edgerton and Genung greater sums than with their fixed salaries will give to each $12,000. It is further directed that the Coatesville Boiler Works shall pay the costs of this suit."

Plaintiffs appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*Horace M. Rumsey,* with him *J. Barton Rettew* and *Rettew & Sproat,* for appellants.—The resolution of the board of directors of November 7, 1904, relating to the payment of an additional yearly amount of bonus to Messrs. Edgerton, Genung and Moore, in addition to their salaries was ultra vires and void and could not be enforced or ratified by the stockholders: Ashhurst's App., 60 Pa. 290; Board of Tippecanoe County Commissioners et al. v. Lafayette, Muncie & Bloomington R. R. Co., 50 Ind. 85; Black v. Delaware & Raritan Canal Co., 24 N. J. Eq. 455; Lauman v. Lebanon Valley R. R. Co., 30 Pa. 46; Morawetz on Private Corporations (2d Ed.) Vol. II, Sections 645, 646; Peterson v. The Mayor, Etc., of N. Y., 17 N. Y. 449; Martin v. Zellerbach et al., 38 Cal. 300; Taymouth Township v. Koehler, 35 Mich. 22; Green's Brice's Ultra Vires (2d Amer. Ed.) (1860) p. 550; Thomas v. West Jersey R. R. Co., 101 U. S. 71;

Lillard et al. v. Oil, Paint & Drug Co. et al., 70 N. J. Eq. 197.

The resolution of November 7, 1904, should not be sustained as a matter of public policy: Pike's Peak Co. v. Pfunter, 158 Mich. 412 (123 N. W. Repr. 19); Hoyle et al. v. Pittsburgh & Montreal R. R. Co. et al., 54 N. Y. 314; Heckelman v. Geyer, 248 Pa. 430; Fox v. Simons, 251 Ill. 316 (96 N. E. Repr. 233); Lay v. Emery, 79 N. W. Repr. 1053.

The court has power to review the compensation voted by the directors to themselves: Freeman v. Stine et al., 38 Leg. Intell. 268; Bergdoll v. Bergdoll Brewing Co. et al., 10 Pa. D. R. 173; Schaffhauser v. Arnholt & Schaefer Brewing Co., 218 Pa. 298; Russell v. Henry C. Patterson Co., 232 Pa. 113.

There was no laches on the part of the plaintiffs in filing this bill of complaint: Chestnut Street Trust & Savings Fund Co. to use v. Record Publishing Co., 18 Pa. D. R. 555.

*W. Horace Hepburn,* with him *A. M. Holding,* for appellees.—The compensation paid by the defendant company to Edgerton, Genung and Moore, was reasonable: Frak v. A. G. Hyde & Son, 119 N. Y. Supp. 879; Young v. U. S. Mortgage & Trust Co., 214 N. Y. 279; Wainwright v. P. H. & F. M. Roots Co., 97 N. E. Repr. 8; see also, L. R. A. Reports, Vol. D (1915), p. 638.

The directors were empowered by the by-laws of the company to make the contract complained of: McGowan v. Lincoln Park & Steamboat Consol. Company, 181 Pa. 55; Bagaley v. Pittsburgh & Lake Superior Iron Co., 146 Pa. 478; Seymour v. Spring Forest Cemetery Assn., 114 N. Y. 333 (39 N. E. Repr. 369).

OPINION BY MR. JUSTICE MOSCHZISKER, April 16, 1917:

October 15, 1915, Frederick Sotter filed a bill in equity praying, inter alia, that the Coatesville Boiler Works be restrained from giving certain of its officers, named as

codefendants, any compensation in excess of their regular annual salaries, further that these latter should be ordered to account for all moneys theretofore received by them over and above such salaries; subsequently two other stockholders intervened as plaintiffs. After answer and replication, the case came to trial; the decree favored the defendants and the plaintiffs have appealed.

The defendant company has a capital of $100,000, divided into 1,000 shares, at a par value of $100; when the bill was filed, Mr. Sotter owned 100 of these shares, and the other two plaintiffs 31 shares between them. The individual defendants then held stock as follows: Charles Edgerton, 300 shares; Nelson H. Genung, 208 shares, and Fred E. Moore held 18 shares in his own right, but none as executor. In November, 1900, Edgerton was elected president, Genung vice-president, and Edwin T. Moore, secretary and treasurer of the corporation, each of them being re-elected annually till the death of the latter, in September, 1913, when he was succeeded by Fred E. Moore. December 10, 1901, the board of directors fixed the salaries of the three "executive officers" at $400 per month each, and they received that compensation until January 1, 1905; but in 1904 all of them, being dissatisfied, had threatened to resign.

In addition to the routine duties of their respective positions, Edgerton had charge of the Philadelphia headquarters of the company, at the same time earning on the outside about $6,000 a year as a mechanical engineer; Genung was in charge of the New York office and gave his entire time thereto; Moore devoted his attention to the finances of the concern, and superintended the manufacture of its product and the sale thereof from the Coatesville office. Edgerton and Genung were expert engineers, and Moore was especially valuable in his line; under their direction, the company was making a decided success.

After consultation, the board of directors agreed that, if these three men would remain with the company and

give their undivided attention to its interests, they should receive additional compensation over and above their fixed salaries as executive officers. To carry out this understanding, on November 7, 1904, the following resolution was passed: "That in addition to their present salaries, the managers of the company, comprising Charles Edgerton, Nelson H. Genung, and Edwin T. Moore, participate from year to year in the net earnings as shown by the books at the close of each business year. The proportion so distributed to be fifty (50) per centum of the net gain after the regular eight per cent. dividend to the stockholders has been set aside, and is to be equally divided between them. The remaining fifty per centum of profit to be proportioned to 'Wear and Tear of Plant and Machinery,' and to a surplus or undivided profit account as may be determined by the Board of Managers." Thereafter all three officers gave their whole time and attention to the duties of their respective positions and the management of the corporation, receiving compensation in accordance with the terms of this resolution till the fiscal year ending September, 1914, when there was no net gain.

The board of directors consisted of seven members, and when the resolution was passed in November, 1904, there were present the three executive officers and two others. Edgerton and Genung are still directors, and Edwin T. Moore was a member of the board until his death. Although the extra compensation here in question was voted upon by these three personally interested directors, yet, on November 2, 1908, at a meeting of stockholders of the defendant corporation, the subject of this resolution was brought up, and a motion adopted "that we ratify the action of the board of directors......whereby bonuses are being distributed to certain of the employees and members of the executive committee, based on the output and earnings of the company"; and, at a similar meeting in November, 1910, the matter was again considered, a resolution being then passed "dis-

continuing the payment of bonuses to employees who are not officers of the company," thereby impliedly sanctioning payments to those not included in this prohibition.

At the last mentioned meeting, Mr. Sotter was present and took an active part, but not until September, 1914, did the latter complain of the extra compensation received by the officers of the company; and, in consequence, May 17, 1915, a special meeting of the stockholders was called, when a complete report of the whole matter in controversy was made and this resolution passed: "Resolved, That the action of the Board of Directors in paying to Charles Edgerton, Nelson H. Genung and Edwin T. Moore, as Managers of this Company, a share of the profits of the business of this Company equal to fifty per cent. (50%) of the net profits of the business at the end of each year from 1904 to 1914, inclusive, in accordance with the resolution of the Board of Directors adopted at the meeting of November 7, 1904, which reads as follows, [Here the resolution of 1904 is quoted in full] ...... be and the same is hereby ratified and approved; and that the method of arriving at the amount of net profits by the Board at the end of each year is hereby approved." All those present at this meeting, excepting the proxy of Mr. Sotter, voted for the resolution, 694 shares being cast in the affirmative and 100 in the negative. At this time Edgerton and Genung together owned a majority of the stock of the corporation; but when the ratifying resolution was passed in 1908, even in conjunction with Edwin T. Moore, they did not hold a controlling interest.

Following the resolutions already referred to, at the meeting in May, 1915, another was passed authorizing and directing the board to enter into an agreement "with Charles Edgerton, Nelson H. Genung, and such other employees of the Company as they may deem proper, for the payment (in addition to their present salary) from year to year of fifty per cent. of the net earnings,...... after the regular eight per cent. (8%) dividend to stock-

holders has been set aside," this fund to be divided, 1/3 to Edgerton, 1/3 to Genung, and the remaining 1/3 "to such of the employees of the Company as the Board of Directors may from time to time determine upon"; this resolution was carried by the same vote as the other one, quoted in the preceding paragraph.

In addition to the above recited facts, the court below found there was no executive committee of the directorate of the defendant company; that Messrs. Edgerton, Genung and Moore were "the executive officers, not of the board......, but of the corporation, and as such were its working managers"; that they were "recognized and treated as the executives or managers, not of the board of directors, but of the company"; that they performed service outside of their obligations as directors and in addition to their respective official duties; that "the proportion of net earnings paid yearly to Edgerton, Genung and Moore" was to cover these latter services, and, each year, "the technical net gain...... was fixed after the deduction of their percentages"; that all three of these men were of "exceptional ability in their line, and, as a result of their efforts, the company had paid an [annual] eight per cent. dividend......and accumulated a surplus of $238,000"; that "the board of directors of said Company had authorized, under the resolution or motion of November 7, 1904, the payment of 50 per cent. of $102,456.60, representing the net gain ......for the fiscal year ending September, 1915, as follows: to Charles Edgerton, $17,076.10; to Nelson H. Genung, $17,076.10; to Fred E. Moore, $7,076.12," and to three other employees, naming them, $2,000, $3,000 and $5,000 respectively; that, figuring the above awards, the average annual payment to each of the three managers of the defendant corporation, including their salaries as executive officers, would be, approximately, $12,000, for the period from 1905 to 1915, inclusive, and that this was proper and reasonable compensation; finally,

that there was no purpose to overreach or actual fraud in any of the corporate acts here involved.

On, inter alia, the findings and conclusions as we have stated them, the court below entered a final decree restraining the defendant corporation, and "all of its agencies," from making payments out of the fund set aside from profits of the fiscal year ending in 1915, beyond "one-third of 50% of it to Charles Edgerton, and one-third of 50% of it to Nelson H. Genung," and ordering that "annually hereafter......the Coatesville Boiler Works is restrained from paying to Edgerton and Genung greater sums than with their fixed salaries will give to each $12,000." This decree is attacked on many grounds, most of which need not now be discussed, for they are conclusively ruled against the contentions of the appellants in Russell v. H. C. Patterson Co., 232 Pa. 113.

The case just referred to is much like the one at bar. There, as here, certain officers of a private business corporation held a considerable majority of its capital stock, and also constituted the greater number of its directors. The latter body increased the compensation of these officials, as president, vice-president, secretary and treasurer; and this action was subsequently ratified at a meeting of stockholders, the beneficiaries all voting for the ratification motion. A minority stockholder filed a bill in equity averring, inter alia, that the salaries as raised "were exorbitant, unreasonable and unfair, and that the increase was illegal because it could not have been made without the votes of......the incumbents of the offices." The trial court sustained the contentions of the complainant and granted relief accordingly, but, on appeal, we reversed, holding that "the directors had a right to serve......in the capacity of officers or employees and to receive compensation for such services, if legally employed by the company" (Act of May 14, 1891, P. L. 61; Act of May 20, 1891, P. L. 101); and, since the chancellor had found that the increase of salaries was "not more than reasonable compensation for the services

rendered," we dismissed the bill. In the course of our opinion in that case, speaking by Mr. Justice MESTREZAT, we held, as a matter of law, that the action of the board of directors in raising the remuneration of the officers in question, who were members of the board and voted for the increase, was voidable, but not void; hence that, in the absence of evidence showing overreaching or actual fraud, even though "the voting of the salaries by the directors constituted a technical or constructive fraud," the action could be and was in fact duly ratified by the stockholders; and this notwithstanding the majority of the stock was held and voted by the beneficiaries of the act approved. We also there distinguish Schaffhauser v. Arnholt & Schaefer Brewing Co., 218 Pa. 298, relied upon by appellants.

In all essential particulars, save three, the rulings in Russell v. Patterson, supra, amply cover and govern the points raised at bar; and, on that authority, we dismiss most of appellants' contentions, without further discussion. The three material particulars, however, wherein the present case differs from Russell v. Patterson, are these: Here, after determining $12,000 each per annum to be a just and proper compensation for all the services rendered by Mr. Edgerton and Mr. Genung, the court below awarded each of them, for the fiscal year 1915, $21,876.10; next, the final decree entered stipulates that hereafter, without limit of duration, the defendant company is restrained from paying either one of these defendants "greater sums than with their fixed salaries will give to each $12,000" per annum; finally, the injunction, in effect, forbids any payments, over and above fixed salaries, to the successor of Edwin T. Moore and the three other employees voted extra compensation by the second resolution of May 17, 1915, although none of the latter are included as defendants, and no finding is made by the court below that their respective services did not merit the amounts awarded them by the board of directors of the defendant corporation, or that such sums

were more than reasonable compensation. These three matters raise questions which call for further consideration.

On the first of the above suggested points, it appears that Mr. Edgerton, Mr. Genung and Mr. Edwin T. Moore, from 1905 to 1913, inclusive, together with their regular salaries, each received an average compensation of about $11,000 per annum; but in 1914 they were paid only their salaries, there being no extra profits to divide. In 1915 the business of the boiler works was very prosperous, and the court below, by its decree, allows to Mr. Edgerton and Mr. Genung, respectively, $21,876.10 out of the profits of that year; and this is done on the theory that, when the amounts in question are spread over the whole period involved, including 1914 when no bonuses were paid, they give to each of these defendants only $12,000 per annum, the compensation which the chancellors found to be right and proper. The weakness of this position, however, is that the resolution of 1904 expressly stipulates the beneficiaries therein named shall in addition to their regular salaries, "participate from year to year" in the net earnings of the corporation, "as shown by the books at the close of each business year." It appears that divisions were made from year to year in strict accordance with the terms of this resolution, and that the shares awarded to Messrs. Edgerton, Genung and Moore were, on each occasion, accepted by them. Under these circumstances, the question of compensation for passed years, so far as the recipients are concerned, was closed; and the only issue which the trial court properly had before it was as to the compensation proposed to be paid them, or any of them, for the year 1915. As already stated, the finding on that score was that $12,000 per annum represented the amount earned by each of these defendants, and since, on the facts at bar, it was within the power of the court to make this finding, which was unappealed from, that sum marked the limit of the al-

lowance of remuneration for the fiscal year 1915 which should have been made to Mr. Edgerton and Mr. Genung; hence, to this extent at least, the decree complained of must be modified.

On the question of the right of the learned court below to fix compensation for services to be rendered in the future, and to restrain the defendant corporation from paying to certain designated persons more than a stipulated sum per year for such future services, we find no authority for the decree as entered. It is well established that directors may contract with agents or employees of their corporation, who are likewise directors, and that, though always subject to close scrutiny and voidable for fraud or overreaching, such contracts are not ipso facto void (Union Pacific R. R. Co. v. Credit Mobilier of America, 135 Mass. 367, 376; Nye v. Storer, 168 Mass. 53, 55); that, when for compensation, and the latter is fair and reasonable, these contracts will be sustained (Fillebrown v. Hayward, 190 Mass. 472, 478; Fraker v. A. G. Hyde & Son, 119 N. Y. S. 879; Wainwright v. P. H. & F. M. Roots Co., 97 N. E. Repr. 8, in Supreme Court of Indiana); further, that a contract of this kind may be ratified and made valid by acquiescence of the stockholders (Kelley v. Newburyport & Amesbury Horse R. R. Co., 141 Mass. 496, 499); finally, that, where a board of directors votes excessive salaries to certain of its members, who are also officers or employees of the corporation, even though such action may subsequently be ratified at a stockholders' meeting, when called in question by a minority stockholder, the action of the board is subject to review by a court in equity, and, if the finding of the latter tribunal is that the salaries in question are exorbitant, it may determine the value of the services rendered by the officers or employees in question and restrain the corporation from paying in excess thereof (Raynolds v. Diamond Mills Paper Co., 69 N. J. Eq. 299, 310 et seq.; Lillard v. Oil, Paint & Drug Co., 70 N. J. Eq. 197; Davis v. Thomas & Davis Co., 63 N. J. Eq. 572;

Wayne Pike Co. v. Hammons, 129 Indiana 368, 379; Fillebrown v. Hayward, 190 Mass. 472, 478; Russell v. Patterson, supra, where this rule is fully recognized by us) ; but, of course, in such instances, ordinarily, there is no way of satisfactorily determining the value of services to be rendered in the future, when conditions, ex necessitate, may be essentially different from those in the past. Therefore, generally speaking, in cases of this character, a court of equity may deal only with the facts presently before it, and thus determine the reasonable compensation actually earned.  Exceptional cases may arise, however, where, contemplating a continuance of an ascertained state of facts, and guarding their decree accordingly, judicial tribunals may determine compensation to be paid in the future; but we see nothing in the case at bar to take it out of the general rule.

If courts may depart at will from the rule just stated, and substitute their judgments for the legally exercised discretion of the directors of private business corporations, in determining the question of future compensation to be paid to the latter's employees, then there is no reasonable limit to the right of judicial interference with corporate management; but fortunately this is not the law.   Perhaps it may be said that the question of the right of the court below to fix the compensation to be paid in the future to Mr. Edgerton and Mr. Genung, is not raised by the appellants; but since, as already indicated, we must remit the record for modification of the decree along other lines, we deem it proper to call attention to this feature of the case.

The last question, as to the restraint which the decree, in effect, places upon the directors of the defendant corporation, in respect to the payment of extra compensations for the year 1915, to employees other than Mr. Edgerton and Mr. Genung, is raised by at least one of the assignments of error.  In reference thereto, it is sufficient to say that, while the court below may have been fully justified in refusing to sanction payment of

the full amount voted to Fred E. Moore, the successor of Edwin T. Moore, deceased, yet we see no warrant for absolutely prohibiting the payment of any extra compensation whatever to Mr. Moore and the other three employees, in no way included as defendants, to whom the directors likewise voted bonuses for the year 1915. On the present record, the decree as formulated seems too comprehensive in this regard.

At this point, we take occasion to say there is no merit in the contention that the second resolution passed at the meeting in May, 1915, requires a formal contract to be entered into with those who are to receive extra compensation thereunder; such a resolution, when acted upon, is in itself sufficient evidence of the fixed understanding between the corporation and its employees: McGowan v. Lincoln Park & Steamboat Consol. Co., 181 Pa. 55, 56, 61; Fraker v. A. G. Hyde & Son, 119 N. Y. S. 879; Young v. U. S. Mtge. & Trust Co., 214 N. Y. 279, 287. We further add that most of the criticisms made by counsel for the appellants upon the form of the adjudication as stated by the court below, are fully justified. The learned chancellors failed strictly to follow our equity rules, and this has added to our labors on review; but, since we have been able to get a workable understanding of all the material points involved, it would serve no good purpose to require a recasting of the adjudication.

The assignments of error which complain of rulings in conflict with the views here expressed are sustained, and the record is remitted to the court below with directions to modify its decree accordingly; the costs to be paid by the defendant corporation.