## Keith v. Lunox Chemical Works, Inc.

Before Brominski, Bigelow, Hourigan, Olszewski, Podcasy and Dalessandro, *JJ*.

*E. Charles Coslett,* for plaintiff.
*John R. Reap, Jr.,* for defendant.

DALESSANDRO, *J.*, May 6, 1975—The issues to be decided are defendant's exceptions to the court's conclusions of law nos. 2, 3, 4, 5, and 6, and exceptions to the decree nisi.

### HISTORY, FACTS AND DISCUSSION

Plaintiff commenced this suit as the widow of Lester Keith, a former treasurer and employe of defendant corporation, who died owning 125 of the 600 shares of defendant-corporation. Plaintiff claimed that on or about March 26, 1965, her hus-

band transferred to James W. O'Malley 45 shares of stock and that at a meeting on that date of the full board of directors, who owned the remaining stock, a resolution was unanimously passed wherein the company agreed to pay her husband for his services rendered and to be rendered to the company the sum of $100 per month for his life and after his death $100 per month to her for her life. The resolution did not require plaintiff to render services. Defendant paid Lester Keith the $100 per month from March 1965, until July 29, 1969, the date of his death, and thereafter paid plaintiff $100 per month until September of 1970.

Plaintiff asked the court to order defendant to pay her $100 per month from October 1970, until her death. After the trial, the Chancellor's adjudication granted plaintiff the relief requested.

Defendant's exceptions will be discussed in their numerical sequence.

Conclusion of law no. 2 states:

"The corporate resolution requiring performance of a designated act (the rendition of services by Lester Keith to the corporation) constituted an offer to contract."

This conclusion of law is supported by the court's findings of fact nos. 6, 7, 8, and 9.

Those particular findings of fact are to the general effect that there was a motion unanimously passed by the directors, who owned all of the shares of the corporation, to pay Lester Keith for services rendered and to be rendered to the company the sum of $100 per month so long as he lived and at his death to his widow, Reava Keith, for her life. It was further found as facts that Lester Keith did render services from March 26, 1965, to July 29, 1969, the date of his death, that he was paid

$100 per month for said services, and that defendant paid plaintiff, who performed no service, $100 per month after her husband's death until September 1970, a period of at least 14 months. Those facts clearly establish an offer from the corporation to Lester Keith which was accepted by Lester Keith and thereby resulted in a contract. The conduct of the corporation and Lester Keith established without a doubt that conclusion of law no. 3 (acceptance of the offer by Lester Keith) and conclusion of law no. 4 (the offer and acceptance created a binding contract) were proper.

Section 65 of 1 Williston, Acceptance of Offers, 212 (3d ed.), states:

"An offer for a unilateral contract generally requires an act on the part of the offeree to make a binding contract. This act is consideration for the promise contained in the offer and doing it with intent to accept without more will create a contract . . . ."

Conclusion of law no. 5 is:

"A corporate resolution when acted upon is in itself sufficient evidence of a fixed understanding between the corporation and its employee. Sotter, et al. v. Coatesville Boiler Works, et al., 257 Pa. 411. In the present case the defendant corporation paid Lester Keith $100 per month until he died. Thereafter the corporation paid the sum of $100 per month to his widow for a period of fourteen months. Such action by the corporation is evidence of an understanding (the terms of which are expressed in the March 26, 1965, corporate resolution) between the corporation and Lester Keith."

This conclusion of law is sustained by virtue of the finding of fact no. 6 to the effect that there was a motion, properly seconded, and unanimously

agreed upon, to pay Lester Keith the sum of money for his services rendered and to be rendered. Defendant's interpretation of the motion by paying the $100 per month to Lester Keith until his death and thereafter paying $100 per month to his widow, who performed no services, is the best evidence of the intent of the corporation acting pursuant to a proper motion placed on its books on March 26, 1965: Sotter et al. v. Coatesville Boiler Works, et al., supra, 257 Pa. 411, 101 Atl. 744 (1917).

The corporate structure prior to March 26, 1965, is of vital importance in that before that date the shares were owned as follows:

| | |
|---|---|
| James A. O'Malley, president | 260 shares |
| William O'Malley | 170 shares |
| Lester Keith | 170 shares |
| | 600 Total |

It is obvious that Lester Keith was in a strong position to join any one of the two other shareholders in controlling the corporation. If he joined with James A. O'Malley in deciding corporate affairs, both of them would have a total of 430 shares to give them control of the corporation; if he joined with William O'Malley there would be 340 shares between them which would give them control of the corporation. Of course, William O'Malley and James A. O'Malley could join together and control the corporation also.

The record does not indicate what, if any, consideration was given to Lester Keith for the transfer of 45 shares to James W. O'Malley, the son of James A. O'Malley, the president. Regardless of whether he made a gift of the stock to James W. O'Malley in reliance upon the resolution involved, or whether he sold his shares in reliance upon the

resolution involved, the other shareholders and the corporation were placed in a different position after the transfer of Mr. Keith's 45 shares. The stock ownership after March 26, 1965, was as follows:

| | |
|---|---|
| James A. O'Malley, president | 260 shares |
| William O'Malley | 170 shares |
| Lester Keith | 125 shares |
| James W. O'Malley, the president's son | 45 shares |
| | 600 Total |

Since there was a total of 600 shares issued by the corporation, it is obvious that the shares owned by the president and his son total 305 and give them control of the corporation. The only way that Lester Keith could be part of the controlling shareholders would be by joining with James A. O'Malley, president, who, together with him, would own 385 shares, or by joining with James W. O'Malley and William O'Malley and thereby have 340 shares.

By transferring 45 shares to James W. O'Malley, who never owned any stock, a decided change was accomplished in corporate control. It is the court's determination that the rearrangement of the corporate shares structure was a vital part of the resolution involved in this case.

Conclusion of law no. 6 is "Under the present agreement, which provided, inter alia, that upon the death of Lester Keith, his widow would receive a monthly sum for her lifetime, the widow's interest was that of a donee beneficiary to the contract."

This is sustained by findings of fact nos. 3, 6, 7, 8, and 9, which are as follows:

"3. Plaintiff is the widow of Lester Keith, former

Treasurer of the Defendant corporation, who died on or about the 29th day of July, 1969, owning one hundred twenty-five shares of stock of the six hundred shares issued by the Defendant corporation. . . ."

"6. On or about the 26th day of March 1965, the Board of Directors and shareholders of the Defendant Corporation held a meeting. On the motion of William L. O'Malley (holder of one hundred seventy shares), seconded by James A. O'Malley (holder of two hundred sixty shares), it was unanimously agreed to pay Lester Keith for services rendered and to be rendered to the corporation, the sum of One Hundred ($100.00) Dollars per month, so long as he lived, and after his death, to his widow, Reava Keith, for the term of her life.

"7. James A. O'Malley, William O'Malley, James W. O'Malley, and Lester Keith (all of the shareholders of the Defendant corporation) were present at the March 26, 1965, meeting.

"8. Lester Keith rendered services to the Defendant corporation until the date of his death, July 29, 1969.

"9. The Defendant corporation paid the sum of One Hundred ($100.00) Dollars per month to Lester Keith until the date of his death, July 29, 1969, and thereafter continued to pay the sum of One Hundred ($100.00) Dollars per month to his widow, the plaintiff herein, until the month of September, 1970, at which time it discontinued payments."

The contract between defendant and Lester Keith did not require service to be rendered to the corporation by plaintiff. Reava Keith was clearly a donee beneficiary.

"A donee beneficiary of a contract is a third party

to whom the promised beneficial performance comes without cost to himself as a donation from the promisee. Thus when the performance of a promise in a contract will benefit a third person, such person is a donee beneficiary if it appears from the terms of the promise, in view of the accompanying circumstances, that the purpose of the promisee in obtaining the promise was to make a gift to the third person or to confer upon him a right against the promisor to some performance neither due nor asserted to be due from the promisee to the third person. As used here, the word gift refers primarily to some performance or right which is not paid for by the third person and which is apparently designed to benefit him.": 8 P.L. Encyc., §204, 250, 251.

Conclusion of law no. 6 is further supported by the Business Corporation Law of Pennsylvania which provides:

"Every business corporation may, by resolution of its board of directors, grant allowances or pensions to its directors, officers and employes and, after their death, to their dependents or beneficiaries whether or not such a grant was made during their lifetime.": Act of May 5, 1933, P.L. 364, as amended, 15 P.S. §1316.

The defendant's principal argument, as stated in its brief, is "The crux of this case is whether the Court erred in failing to supplement the corporate minutes, Plaintiff's Exhibit No. 1."

The chancellor allowed parol evidence by James A. O'Malley, the president of the company, who stated that the corporate minutes did not reflect the full agreement or the full action that was discussed and the basis for the payment of $100 per month was that he, Lester Keith, always got that

in the past and that he would render services in the future for that amount of money.

At page 13, the president was asked:

"Q. What was the substance of your discussion with reference to what would happen if Mr. Keith were to die?

"A. We never discussed that, John, but as you talk about this . . ."

At page 9 of the record, James W. O'Malley (son of the president) was asked:

"Q. Now, I show you Plaintiff's Exhibit No. 1 being Excerpt of the Minutes of the Lunox Chemical Works, will you read the excerpt down to the period?"

After examining the corporate minutes involved, the witness was then asked:

"Q. Mr. O'Malley, does that corporate minutes you just read reflect the entire agreement arrived at after discussion with Mr. Keith?"

The court overruled an objection by plaintiff's counsel and witness answered, "yes."

The explanation given by the president and his son was additional proof that the corporation intended Lester Keith's widow to receive $100 per month for her life without rendering any services to the company. Added to that was the further consideration which Lester Keith gave the corporation, which was the obligation of him and his wife after the death of the survivor of them to sell the Keith stock at book value to the other shareholders or otherwise dispose of as provided in the article of agreement.

Considering that Lester Keith parted with 45 shares of stock, committed himself and his wife to sell the Keith stock as previously indicated, that Lester Keith continued to render services and was

paid $100 per month, and the fact that defendant paid plaintiff $100 per month for 14 months after her husband's death without her rendering any services, the conclusions of law nos. 2, 3, 4, 5, and 6, and the decree nisi were fully supported by the evidence.

## FINAL DECREE

Defendant's exceptions to the court's conclusions of law nos. 2, 3, 4, 5, and 6, and defendant's exceptions to the court's decree nisi are dismissed.

The court en banc adopts and approves the chancellor's findings of fact and conclusions of law. The decree nisi is affirmed and by operation of law hereby becomes a final decree.