ESTATE OF ANTHONY F. DiMARCO, DECEASED, JOAN M. DiMARCO, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18965-83. Filed September 24, 1986.

*John M. Vine* and *David N. Heap*, for the petitioner.
*Warren P. Simonsen*, for the respondent.

OPINION

STERRETT, *Chief Judge*: By notice of deficiency dated May 4, 1983, respondent determined a deficiency in petitioner's Federal estate tax of $17,830.88. As a result of concessions by both parties,[1] the only issue presented in this case is whether the present value of a survivors income benefit payable with respect to the decedent by decedent's employer is an adjusted taxable gift within the meaning of section 2001.[2]

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is the Estate of Anthony F. DiMarco, Joan M. DiMarco, personal representative. Joan M. DiMarco is and at all relevant times has been the sole personal representative of petitioner. At the time the petition was filed in this case, Joan M. DiMarco resided in Wappingers Falls, New York. The Federal estate tax return of Anthony F. DiMarco was filed with the Office of the Internal Revenue Service at Andover, Massachusetts.

Anthony F. DiMarco (hereinafter referred to as the decedent) was born on August 31, 1925. He died on November 16, 1979, survived by his wife, Joan M. DiMarco, and five children. He had been employed continuously by the International Business Machines Corp. (IBM) as an active, regular, full-time, permanent employee from January 9, 1950, until his death. On May 2, 1953, decedent and Joan M. DiMarco were married; he had not been previously married. Decedent's parents were not dependent upon him for their support at any time between the date when his employment with IBM began and the date of his marriage to Joan M. DiMarco. At the time of his death, decedent was employed as an electrical engineer at a salary of $5,250 per month. He was not an officer of the corporation and did not have a written employment contract.

---

[1]Petitioner concedes that minor adjustments made by respondent to the value of decedent's gross estate and debts are correct, and respondent concedes that the gift tax exclusion provided by sec. 2503 is allowable in computing the amount of the deficiency, if any is redetermined.

[2]Unless otherwise indicated, all sections referred to are sections of the Internal Revenue Code of 1954 as amended and in effect at the time of decedent's death, and all Rules referred to are the Rules of Practice and Procedure of this Court.

On November 16, 1979, and at all other times relevant to this proceeding, IBM maintained a noncontributory Group Life Insurance and Survivors Income Benefit Plan (hereinafter referred to as the plan) for the benefit of its regular employees. IBM established the plan in September of 1934, and while the plan has been amended on many occasions since that time, it has, since January of 1935, provided two basic benefits: (i) group term life insurance, and (ii) an uninsured and unfunded survivors income benefit.

The plan provided group term life insurance pursuant to a group contract between IBM and the Prudential Life Insurance Co. of America. The amount of insurance payable under the plan was dependent on the length of the employee's service with the company.

The plan also provided a survivors income benefit on an uninsured and unfunded basis; that is, all survivors income benefits were paid out of IBM's general assets. With the exception of fewer than 30 top executives, all regular IBM employees, including decedent, were covered automatically by the survivors income benefit portion of the plan. At the time of decedent's death, the amount of the survivors income benefit was equal to three times the employee's regular annual compensation. Under the terms of the plan, the benefit was payable only to an employee's surviving spouse, certain minor and dependent children, and dependent parents. Payment was made semimonthly, at the monthly rate of one-quarter of the employee's regular monthly compensation, and continued until the total benefit was paid. However, payments continued only so long as there remained at least one eligible survivor, and if the employee left no eligible survivor at death, no benefit was payable.

Decedent never had any power to alter, amend, revoke, or terminate the plan in whole or in part. He had no power to select or change the beneficiaries of the survivors income benefit; no power to change the amount, form, or timing of the survivors income benefit payments; no power to substitute other benefits for the survivors income benefit; and, other than by resigning his employment with IBM, no power to terminate his coverage under the plan. However, IBM expressly reserved the right, in its discretion, to

modify the plan if it determined that it was advisable to do so.

Joan M. DiMarco, as decedent's surviving spouse, was entitled under the plan to receive a survivors income benefit, payable semimonthly, in the amount of $656.25.[3] Decedent did not report the survivors income benefit as a gift on a gift tax return, and petitioner did not report it either as part of the gross estate or as an adjusted taxable gift on decedent's Federal estate tax return. However, the existence of the survivors income benefit was reported by petitioner on Schedule I of decedent's Federal estate tax return.

In his notice of deficiency, respondent "determined that an adjusted taxable gift of the present value of the IBM Survivor Annuity was made by the decedent on the date of death as it was not susceptible of valuation until the date of death." Respondent then determined that the present value of the survivors income benefit was $135,885,[4] and he added this amount, as an adjusted taxable gift, to the taxable estate of decedent in computing the amount of the deficiency.

The only issue for decision in this case is whether the present value of the survivors income benefit that is payable by IBM to Joan M. DiMarco is an adjusted taxable gift within the meaning of section 2001. The term "adjusted taxable gifts" is defined by section 2001(b) as "the total amount of the taxable gifts (within the meaning of section 2503) made by the decedent after December 31, 1976, other than gifts which are includable in the gross estate of the decedent."[5] Section 2503(a) in turn defines "taxable gifts"

---

[3]Under the terms of the plan, decedent's surviving spouse was entitled to receive these semimonthly payments until her death, remarriage, or the exhaustion of the total amount of the survivors income benefit. If she died or remarried prior to the exhaustion of the fund, the semimonthly payments would be continued to decedent's other eligible survivors.

[4]Petitioner does not dispute that this value represents the present value of the survivors income benefit.

[5]Sec. 2001 provided, in pertinent part, as follows:

SEC. 2001. IMPOSITION AND RATE OF TAX.

(a) IMPOSITION.—A tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States.

(b) COMPUTATION OF TAX.—The tax imposed by this section shall be the amount equal to the excess (if any) of—

(1) a tentative tax computed in accordance with the rate schedule set forth in subsection (c) on the sum of—

(A) the amount of the taxable estate, and

as the "total amount of gifts" made during the applicable period less certain statutory deductions.[6] Thus, the survivors income benefit that is payable by IBM to Joan M. DiMarco is an adjusted taxable gift within the meaning of section 2001 only if it is also a taxable gift within the meaning of section 2503 that was made by decedent after December 31, 1976.

We begin our analysis by noting that it is unclear precisely what respondent argues in this case. On brief, he proposes that we adopt as an ultimate finding of fact that "Decedent made a completed gift of the Survivor's Benefit to unnamed beneficiaries upon the commencement of his employment on January 9, 1950." Two pages later in the same brief he argues that "the transfer should be treated as a completed gift in 1979." In the statutory notice of deficiency and the stipulation of facts, respondent appears to take the position that decedent actually made a completed gift of the survivors income benefit at the time of his death in 1979. Respondent finally attempts to clarify his position by stating in his reply brief that it is his "position that the gift of the Survivor's Benefit occurred in 1950 and the inability to value said gift requires * * * [respondent] to treat the gift as complete on the date of death when the gift finally became subject to valuation."

After reviewing carefully respondent's briefs, the statutory notice of deficiency, and the stipulation of facts, it appears to us that respondent is making two arguments in this case. First, it appears that respondent argues that decedent made a completed transfer of a property interest in the survivors income benefit for gift tax purposes on January 9, 1950, but that because the interest could not be

---

(B) the amount of the adjusted taxable gifts, over

(2) the aggregate amount of tax payable under chapter 12 with respect to gifts made by the decedent after December 31, 1976.

For purposes of paragraph (1)(B), the term "adjusted taxable gifts" means the total amount of the taxable gifts (within the meaning of section 2503) made by the decedent after December 31, 1976, other than gifts which are includible in the gross estate of the decedent.

[6]Sec. 2503(a) provided:

SEC. 2503. TAXABLE GIFTS.

(a) GENERAL DEFINITION.—The term "taxable gifts" means, in the case of gifts made after December 31, 1970, the total amount of gifts made during the calendar quarter, less the deductions provided in subchapter C (sec. 2521 and following). In the case of gifts made before January 1, 1971, such term means the total amount of gifts made during the calendar year, less the deductions provided in subchapter C.

valued at that time, it was necessary to treat the transfer as an open transaction and to value the transferred property and impose the gift tax on the date of decedent's death, when the property interest finally became subject to valuation. In the alternative, respondent appears to argue that decedent made an incomplete transfer of a property interest in the survivors income benefit for gift tax purposes on January 9, 1950, because the property interest could not be valued at that time, but that the transfer became complete on November 16, 1979, when decedent died, because the transferred property could then and for the first time be valued.

Petitioner argues, for a variety of reasons, that decedent never made a taxable gift of the survivors income benefit. Petitioner argues that decedent never owned a property interest in the survivors income benefit that he was capable of transferring. Petitioner further contends that, even if decedent owned such an interest, he never transferred it, and if he did transfer it, he never did so voluntarily. Petitioner also asserts that transfers of property cannot become complete for gift tax purposes upon the death of the donor, and that decedent never made a completed transfer of any property interest he may have owned in the survivors income benefit before his death because he always had the power to revoke the transfer, if any was made, simply by resigning his employment with IBM. Petitioner finally argues that, if the decedent made a taxable gift of the survivors income benefit, he did so before December 31, 1976, and that such a gift does not qualify as an adjusted taxable gift within the meaning of section 2001. For the reasons set forth below, we find for petitioner.

Section 2501(a)(1) imposes a tax on the "transfer of property by gift." Section 2511(a) provides that the tax "shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." However, a transfer of property qualifies as a taxable gift only if the transfer is complete, and a transfer is complete for gift tax purposes only when the transferor relinquishes dominion and control over the transferred property. Sec. 25.2511-2(b), Gift Tax Regs.; *Estate of Sanford v. Commissioner,*

308 U.S. 39, 42-43 (1939). At the time the transfer is complete, the transferred property must be valued. Sec. 2512(a). This value is then used in determining the gift tax that is due. Sec. 2502.

Respondent argues that decedent transferred a property interest in the survivors income benefit for gift tax purposes on January 9, 1950. This transfer was either complete or incomplete for gift tax purposes. If the transfer was complete, we have little difficulty in disposing of this case because a completed transfer would have been a taxable gift that was made by decedent before December 31, 1976, and section 2001 expressly defines an adjusted taxable gift as a taxable gift that was made after December 31, 1976. On the other hand, if the transfer was incomplete for gift tax purposes, we do not believe that it became complete or that we can deem that it became complete at the time of decedent's death.[7] Section 25.2511-2(f), Gift Tax Regs., provides that—

The relinquishment or termination of a power to change the beneficiaries of transferred property, *occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors)*, is regarded as the event that completes the gift and causes the tax to apply. * * * [Emphasis added.]

We believe that this regulation precludes our finding in this case that the alleged transfer of property by decedent on January 9, 1950, became complete for gift tax purposes by reason of decedent's death.

We recognize, of course, that respondent does not assert in this case that the alleged transfer on January 9, 1950, became complete and subject to the gift tax because decedent's death terminated a power to change the beneficiaries of the transferred property. Even so, in view of the fact that a transfer of property that becomes complete because the donor's death terminates a power to change the beneficiaries of the transferred property is not subject to the gift tax, we decline to hold that a transfer of property that becomes complete because the donor's death makes it possible for the first time to value the transferred property is subject to the gift tax. We perceive nothing in the gift

[7]Respondent does not assert that the transfer became complete for gift tax purposes at any time other than Jan. 9, 1950, or Nov. 16, 1979.

tax statute or the regulations that would justify such a result.

In addition, we believe that respondent has confused the issues of completion and valuation in this case. Respondent appears to argue that, because the value of the survivors income benefit could not be determined on January 9, 1950, when the alleged transfer occurred, the transfer should be treated as incomplete for gift tax purposes until the survivors income benefit became susceptible of valuation, when decedent died, at which time the transfer became complete and subject to the gift tax. For the reasons stated above, we have already held that transfers of property do not become complete for gift tax purposes by reason of the death of the donor. We also question, however, whether the fact that the value of transferred property cannot be readily determined at the time of transfer is relevant in determining whether the transfer is complete for gift tax purposes. We have noted above that transfers of property are complete and subject to the gift tax at the time the donor relinquishes dominion and control over the transferred property. Nothing in the statute or the regulations suggests that, even if a donor relinquishes dominion and control over transferred property, the transfer is or can be considered to be incomplete for gift tax purposes if the value of the property is uncertain. To the contrary, in *Smith v. Shaughnessy*, 318 U.S. 176, 180 (1943), the Supreme Court appears to have considered and expressly rejected this argument in the following language:

> The government argues that for gift tax purposes the taxpayer has abandoned control of the remainder and that it is therefore taxable, while the taxpayer contends that no realistic value can be placed on the contingent remainder and that it therefore should not be classed as a gift.
>
> We cannot accept any suggestion that the complexity of a property interest * * * can serve to defeat a tax. * * * Even though these concepts of property and value may be slippery and elusive they can not escape taxation so long as they are used in the world of business. The language of the gift tax statute, "property * * * real or personal, tangible or intangible," is broad enough to include property, however conceptual or contingent. * * *

Accordingly, we reject any suggestion by respondent either that transfers of property are incomplete for gift tax

purposes simply because "no realistic value can be placed" on the property at the time the transfer occurs, or that transfers of property become complete for gift tax purposes only when the value of the transferred property can be easily ascertained.

Respondent also argues that completed transfers of property for gift tax purposes can and should be treated as open transactions in those cases where the transferred property is difficult to value, and that valuation of the transferred property and the imposition of the gift tax should be postponed until the value of the property can be readily determined. We reject this contention. The clear language of the statute and the regulations requires that transferred property be valued for gift tax purposes at the time the transfer becomes complete. Section 2512(a) provides that, in the case of a gift, "the value thereof at the *date of the gift* shall be considered the amount of the gift." (Emphasis added.) In addition, section 25.2511-2(a), Gift Tax Regs., states as follows:

> The gift tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer * * * . On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his *act of making the transfer,* [and] *is measured by the value of the property passing from the donor* * * * [Emphasis added.]

As a result, property must be valued and the gift tax imposed at the time a completed transfer of the property occurs.[8]

We also agree with petitioner that decedent never made a taxable gift of any property interest in the survivors income benefit because we find no act by decedent that qualifies as an act of "transfer" of an interest in property. His participation in the plan was involuntary, he had no power to select or change the beneficiaries of the survivors income benefit, no power to alter the amount or timing of the

---

[8]Respondent relies heavily on Rev. Rul. 81-31, 1981-1 C.B. 475, and argues here that we should adopt its reasoning and holding. To the extent that this ruling can be read as holding either that a transfer of property can become complete for gift tax purposes by reason of the death of the donor, or that it is permissible to treat a completed transfer of property as an open transaction and to value the transferred property and impose the gift tax at some time other than when the completed transfer occurs, we regard the ruling as being inconsistent with the gift tax statute and the regulations.

payment of the benefit, and no power to substitute other benefits for those prescribed by the plan. These facts are substantially similar to the facts of *Estate of Miller v. Commissioner*, 14 T.C. 657 (1950), an estate tax case wherein we also concluded that the decedent had performed no qualifying act of transfer. In *Estate of Miller*, respondent argued, relying on cases where the decedent had purchased for a lump sum joint and survivor annuity contracts and at the time of purchase irrevocably designated the surviving annuitants, that the decedent had, for purposes of section 811(c) of the 1939 Code, transferred property during his life that was intended to take effect at his death. We rejected this contention and concluded that the decedent could not have transferred any property interest for any purpose because he had not performed any act that possibly could be construed as an act of transfer. We stated as follows:

we find no act on the part of the decedent which we think can properly be characterized as a "transfer" of an interest in property. Unlike the purchase of the annuity contracts in the *Wilder*, *Clise*, and *Mearkle* cases, the decedent's participation in the pension plan inaugurated by his employer was not voluntary. The plan itself nominated the surviving beneficiaries, limiting them to the wife or the minor children of the officer or employee. Decedent, other than by continuing in his employment at the bank, which incidentally he had enjoyed for 13 years prior to the establishment of the plan, had no part in the selection of his wife as a surviving pensioner. Nor did he personally possess any means of defeating her pension rights other than by resigning his position at the bank. * * * [14 T.C. at 664-665.]

While we recognize that in *Estate of Miller* respondent argued that there had been a transfer of property that was subject to the estate tax, and in this case respondent argues that there has been a transfer of property that is subject to the gift tax, we do not believe that this difference is significant. To the contrary, this Court and others have long held that the estate and gift taxes are to be read in pari materia and construed together. *Merrill v. Fahs*, 324 U.S. 308, 311-313 (1945); *Estate of Sanford v. Commissioner*, 308 U.S. 39, 42, 44 (1939); *Carson v. Commissioner*, 71 T.C. 252, 260 (1978), affd. 641 F.2d 864 (10th Cir. 1981).

Respondent argues, however, that decedent's simple act of going to work for IBM on January 9, 1950, constituted an act of transfer by decedent for gift tax purposes. We

disagree. None of the cases cited by respondent hold that, without more, the simple act of going to work for an employer that has an automatic, nonelective, company-wide survivors income benefit plan similar to the one at issue in this case constitutes a "transfer" of an interest in the benefit for either estate or gift tax purposes. Moreover, we doubt that it can be maintained seriously that decedent began his employment with IBM on January 9, 1950 (when he was 24, unmarried, and without dependents), for the purpose or with any intention of transferring property rights in the survivors income benefit. While we agree with respondent that a taxable event may occur without a volitional act by the donor, as in a case where an incomplete transfer of property becomes complete because of the occurrence of an event outside the donor's control, we do not believe that a taxable event can occur for gift tax purposes unless there is first and in fact an act of transfer by the donor; and there can be no act of transfer unless the act is voluntary and the transferor has some awareness that he is in fact making a transfer of property, that is, he must intend to do so. See *Harris v. Commissioner*, 340 U.S. 106, 109 (1950); *Welch v. Henry*, 305 U.S. 134, 147 (1938); *Estate of Hite v. Commissioner*, 49 T.C. 580, 594 (1968); *Seligmann v. Commissioner*, 9 T.C. 191, 195 (1947).[9] It is apparent to us that decedent never intended and never voluntarily acted to transfer any interest that he may have owned in the survivors income benefit. There being no act of transfer by decedent, there can be no transfer of property by gift.

Moreover, we question whether decedent ever owned a property interest in the survivors income benefit that he was capable of transferring during his lifetime.[10] He had no voice in selecting the beneficiaries of the survivors income

---

[9]The fact that there can be no taxable gift unless there is a voluntary act of transfer does not mean that the donor also must have donative intent when he makes the transfer. Sec. 25.2511-1(g)(1), Gift Tax Regs.; *Commissioner v. Wemyss*, 324 U.S. 303, 306 (1945). Any completed transfer of a beneficial interest in property for less than an adequate and full consideration in money or money's worth, unless made in the ordinary course of business, will be subject to the gift tax. Sec. 25.2512-8, Gift Tax Regs.

[10]The parties stipulated that "Petitioner does not dispute Respondent's contention that Decedent's eligible survivors had a right to receive payment under the plan as long as the conditions set forth in the plan were satisfied." While we are uncertain what the parties intended by this stipulation, we note that to the extent it may be read as a stipulation of law, we are not bound by it. *Rollert Residuary Trust v. Commissioner*, 80 T.C. 619, 630 (1983), affd. 752 F.2d 1128 (6th Cir. 1985).

benefit and no ability to affect or determine the benefits payable to them. The categories of beneficiaries, the determination whether a claimant is an eligible beneficiary, and the amounts payable to the beneficiaries all were controlled directly by the provisions of the plan and indirectly by IBM, and payments were made directly to the beneficiaries by IBM. Furthermore, the benefits were payable out of the general assets of IBM, not out of any fund in which decedent had a vested interest, and the benefits did not accrue until decedent's death. Most importantly, IBM had the power and the right to modify the plan and the survivors income benefit at any time and in its sole discretion. Under these circumstances, we have little difficulty in concluding that decedent never acquired fixed and enforceable property rights in the survivors income benefit that he was capable of transferring during his lifetime. In *Estate of Miller v. Commissioner, supra*, we reached the same conclusion, on similar facts, in the following language:

The trustees were empowered at any time to change the rules and regulations or to substitute entirely new rules * * * . The pension trust could be terminated at any time by the bank and, although rule 29 provided that upon termination provision should be made for the continuance of all pensions then being paid to pensioners, there was no assurance that decedent's pension rights could have been enforced to their fullest extent against the pension trust unless there existed sufficient funds in the trust upon its cessation to discharge all of its obligations.

Nor did the pension rights granted the wife * * * stand in any stronger position than those of her husband, for it is clear that whatever rights she possessed were subject to the same contingencies as those of the decedent * * * . Any pension granted to the wife would cease upon remarriage. * * * it is our considered opinion that decedent's pension rights and those of his wife under the pension trust never acquired the character of fixed and enforceable property rights which were susceptible to transfer by him * * *

[14 T.C. at 664.]

Respondent argues, however, that in *Estate of Wolf v. Commissioner*, 29 T.C. 441 (1957), revd. on other grounds 264 F.2d 82 (3d Cir. 1959), we held in circumstances similar to those in this case, that decedent owned enforceable property rights in three trusts. The facts of *Estate of Wolf* are easily distinguishable from the facts of this case, however, for the same reason that in *Estate of Wolf* we

distinguished *Estate of Miller v. Commissioner, supra*: in *Estate of Wolf* the employer had no unfettered right to modify or terminate the trusts, whereas here, as in *Estate of Miller*, the employer had the right to modify the plan at any time and in its sole discretion. *Estate of Wolf v. Commissioner*, 29 T.C. at 447.

Respondent also attempts to distinguish *Estate of Miller* from this case by arguing that payment of the survivors income benefit in this case was much more likely to occur than was payment of the pension benefit in *Estate of Miller*, because IBM's financial resources were much greater than the resources of the employer in *Estate of Miller*. In addition, respondent argues that the employer in *Estate of Miller* had the unfettered right to change the rules and regulations of the pension plan and even to terminate it, while in this case, IBM only had the right, in its discretion, to modify the plan. In our view, neither of these differences are significant.[11]

In our opinion, decedent never made a taxable gift of any interest in the survivors income benefit to his wife. It follows that the present value of the survivors income benefit is not an adjusted taxable gift within the meaning of section 2001.

*Decision will be entered under Rule 155.*

---

[11]Respondent also argues, citing *Estate of Schelberg v. Commissioner*, 612 F.2d 25 (2d Cir. 1979), revg. 70 T.C. 690 (1978), that the survivors income benefit must be a taxable gift within the meaning of sec. 2503 because it is not taxable under sec. 2039. We of course express no view in this case as to whether the survivors income benefit is taxable under sec. 2039. However, even if the survivors income benefit is not taxable under sec. 2039, we fail to see how that could justify our reaching an improper result in this case.