ESTATE OF STANTON A. LEVIN, DECEASED, INDUSTRIAL VALLEY BANK AND TRUST CO., CAROLINE LEVIN AND MERVIN J. HARTMAN, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 38005-84, 38006-84.     Filed April 19, 1988.

*John M. Bernard* and *David Schechtman,* for the petitioner.

*Alan E. Cobb,* for the respondent.

JACOBS, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $97,761.14. In addition, respondent determined a gift tax deficiency in the amount of $11,433.56 for the calendar quarter ended December 31, 1980, and an addition to tax pursuant to section 6651(a)(1)[1] in the amount of $2,858.39. The deficiencies are premised on the theory that Stanton A. Levin (the decedent) made an inter vivos transfer or gift to his spouse of a post-mortem annuity payable by Marstan Industries, Inc. (Marstan), a corporation which he controlled, under its Officers' Surviving Spouse Plan (the plan). After concessions, the issues for decision are: (1) Whether the commuted

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In his brief, respondent conceded the sec. 6651(a)(1) addition to tax.

value of said annuity is includable in the decedent's gross estate pursuant to either section 2035 or section 2038, or alternatively, (2) whether said annuity constituted an inter vivos gift by the decedent to his spouse subject to gift taxation under section 2511.

## FINDINGS OF FACT

Many of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference.

Stanton A. Levin died December 6, 1980, at age 64, while in apparent good health. At the time of his death, and at relevant times theretofore, he was married to Caroline Levin. In addition to his wife, the decedent was survived by his two sons, Mark and Jerome Levin.

At the time the petition was filed, petitioner had a legal address in Pennsylvania.

At the time of his death, and for a period of 34 years prior thereto, the decedent was employed by Marstan, a Pennsylvania corporation engaged in the wholesale distribution of paper products and janitorial supplies, and a predecessor partnership. He served as Marstan's president from the time of its incorporation in January of 1952 until March 14, 1980, when his son, Mark, was elected president, and he became chairman of the board. The decedent was serving as chairman of the board of Marstan at the time of his death.

Beginning in 1977, the decedent took a less active role in the management of Marstan; he began working only 22 to 26 hours per week and spending 8 to 10 weeks each year on vacation. The day-to-day management of the business was turned over to the decedent's two sons and to Jerome Rose, a long-time trusted employee, although the decedent remained available for consultation when needed. On several occasions, the decedent disagreed with decisions made by his sons and Jerome Rose.

Marstan is a closely held corporation, having two classes of outstanding stock: class A (nonvoting) common stock and class B (voting) common stock. The two classes of stock are identical except as to voting rights. At all relevant times, the outstanding stock of Marstan was owned as follows:

| | Class A | | Class B | |
|---|---|---|---|---|
| | *Number of shares/Percent* | | *Number of shares/Percent* | |
| Decedent | 87 | 13.5 | 134.25 | 83.3 |
| Mark Levin | 225 | 34.9 | - - - | - - - |
| Jerome Levin | 225 | 34.9 | - - - | - - - |
| Jerome Rose[2] | 60 | 9.3 | 15.00 | 9.3 |
| Joseph Bragin[3] | 48 | 7.4 | 12.00 | 7.4 |
| Total | 645 | 100.0 | 161.25 | 100.0 |

On November 5, 1980, Marstan's directors[4] adopted a plan, effective October 1, 1980, which provided for the payment of an annuity to the surviving spouses of the officers of Marstan who died while in the employ of Marstan and who met certain eligibility requirements. The plan was adopted after consultation with the company's attorneys and representatives of an employee benefits consulting organization.

The plan provided:

1. *Purpose.* Marstan Industries, Inc. ("Company") desires to recognize the service and dedication to the Company of its duly appointed officers who have completed substantial periods of service by providing income protection for the spouses of eligible officers in the event of death during employment.

2. *Eligibility.* Duly appointed officers of the Company who have completed thirty (30) or more years of Continuous Service with the Company and have attained age sixty-four (64) shall be covered under this Plan upon their attainment of said eligibility requirements.

3. *Payments.* In the event of the death of an eligible officer during his employment with the Company there shall be payable to his spouse, if said spouse should survive, an annual benefit equal to One Thousand Dollars ($1,000) multiplied by the number of years that the eligible officer was in Continuous Service with the Company. This amount shall be payable in equal monthly installments for the life of the spouse and shall terminate with the last monthly payment due prior to the death of the spouse. No benefits shall be payable hereunder under any circumstances to any person other than the person who was the spouse of the eligible Officer at the time of his death.

4. *Definition.*

(a) "Continuous Service" shall mean Credited Service for benefit accrual under the qualified Pension Plan maintained by the Company.

---

[2]Neither Jerome Rose nor Joseph Bragin is related to the decedent.

[3]Joseph Bragin was Marstan's outside accountant.

[4]The directors of Marstan were the decedent, Mark and Jerome Levin, Jerome Rose, and Joseph Bragin.

(b) "Officer" shall mean the Chairman, Vice-Chairman, President, a Vice-President, Secretary, or Treasurer of the Company.

5. *Miscellaneous.*

(a) The obligations of the Company hereunder represent an unsecured promise of the Company. This Plan shall not require the Company to set aside, segregate, earmark, pay into any trust or special account or otherwise restrict the use of its assets in the operation of the business.

(b) An eligible officer or his surviving spouse shall not have any right to commute, encumber or dispose of the right to receive payments hereunder, all of which payments and the right thereto are expressly declared to be non-assignable and not subject to attachment or legal process.

(c) In the event that the eligible officer or his surviving spouse attempts in any way to dispose of any of his/her rights hereunder in violation of this Plan, all amounts remaining unpaid hereunder shall be forfeited, and the Company shall have no further liability to the officer or spouse hereunder.

(d) This Plan shall be construed and governed by the laws of the Commmonwealth of Pennsylvania except to the extent pre-empted by federal law.

(e) This Plan may be terminated by the Board of Directors of the Company at any time, but such a termination shall have no impact upon any benefits hereunder which are in pay status.

(f) This Plan may be amended by the Board of Directors of the Company at any time, but no amendment shall have any adverse impact upon any benefits hereunder which are in pay status without the written consent of the eligible officer[5]; or surviving spouse receiving such benefits.

At the time the plan was adopted, the titles, ages, and years of continuous service of Marstan's officers were as follows:

| Name | Title | Age | Years of continuous service |
|---|---|---|---|
| Stanton A. Levin | Chairman of the board | [6]63 | 34 |
| Jerome Levin | Vice chairman/secretary | 39 | 17 |
| Mark Levin | President/assistant secretary | 35 | 12 |
| Jerome Rose | Executive vice president/ treasurer | 55 | 29 |

No trust was established nor were any assets set aside or segregated for purposes of making payments under the plan.

---

[5]Inasmuch as no payments under the plan are payable until after the eligible officer's death, it is difficult to comprehend how the written consent of the eligible officer could be obtained once the benefits were in pay status.

[6]At the time of his death, decedent was 64.

Upon the death of the decedent, Marstan became obligated under the plan to pay the decedent's widow, who was then 63 years old, a lifetime annuity of $34,000 per year in monthly installments. Such payments were currently being made as of the date of trial. The parties determined the commuted value of the annuity to Mrs. Levin to be $344,343.16 at the date of the decedent's death.

The plan remained unchanged and in effect at the date of trial.

The commuted value of the annuity to Mrs. Levin was not included in the decedent's gross estate, nor did the decedent pay gift tax on the value of the annuity. Respondent contends that the value of such annuity is subject to estate taxation under either section 2035 or section 2038.[7] Alternatively, respondent contends that the value of the annuity is subject to gift taxation under section 2511.[8]

## OPINION

The dispute involved herein is whether a post mortem annuity payable by the decedent's employer to his surviving spouse is subject to either Federal estate or gift taxation. We will first address whether the annuity is subject to Federal estate taxation.

Section 2001(a) imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. The taxable estate is defined as the decedent's gross estate, less specified deductions. Sec. 2051.

The value of the gross estate of a decedent includes, to the extent provided in part III of chapter 11A of subtitle B of the Code, the value at the time of his death of all property owned by decedent, whether real or personal, tangible or intangible, wherever situated. Sec. 20.0-2, Estate Tax Regs. However, the gross estate also may include property in which the decedent did not have an interest at the time of his death. Sec. 20.0-2(b)(2), Estate Tax Regs. Such is the case when the transfer falls within the purview of either of the estate tax sections here at issue, i.e.,

---

[7] Respondent does not argue that sec. 2039 is applicable. See *Estate of Fusz v. Commissioner*, 46 T.C. 214 (1966).

[8] The record is silent as to whether Marstan deducted the monthly installment payments, and if it did, whether respondent allowed such deduction.

sections 2035(a)[9] and 2038(a)(1). Both sections 2035 and 2038 address interests in property transferred by the decedent during his life under such circumstances as to bring the interests within the decedent's gross estate. Sec. 20.2031-1(a)(2), Estate Tax Regs.

Section 2038(a)(1) provides, in relevant part, as follows:

SEC. 2038(a). IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) * * * To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3-year period ending on the date of decedent's death.

In order for the post mortem annuity to be includable in the decedent's gross estate under section 2038: (1) The decedent must have had a property interest in the post mortem annuity; (2) he must have made a transfer of the annuity during his life; and (3) he must have retained the power to alter, amend, revoke, or terminate the transfer.

Petitioner contends that section 2038 is inapplicable because the post mortem annuity was not property in which the decedent had an interest, and hence, he could not have made the requisite inter vivos transfer to his spouse. Further, petitioner contends that even if the decedent had a property interest in the post mortem annuity and made the requisite inter vivos transfer, he did not retain the power to "alter, amend, revoke or terminate" the transfer of such annuity. Respondent takes an opposing viewpoint.

Since section 2038(a)(1) is applicable only to property which is transferred by a decedent during his lifetime, we first must decide whether the decedent had a property interest in the post mortem annuity, and if so, whether he made the requisite inter vivos transfer. In this regard, we note that "a transfer of property procured through expendi-

---

[9]Because a prerequisite to the application of sec. 2035(a) is a finding that a gift occurred within 3 years of the date of death, sec. 2035(a) will be discussed in the section of this opinion dealing with gift taxation.

tures by the decedent with the purpose, effected at his death, of having it pass to another" is a transfer by a decedent of property. *Estate of Porter v. Commissioner,* 54 T.C. 1066, 1070 (1970), affd. 442 F.2d 915 (1st Cir. 1971), citing *Chase National Bank v. United States,* 278 U.S. 327 (1929).

In order for the post mortem annuity to be considered the decedent's property, Marstan must have been contractually obligated to make the annuity payments. *Estate of Porter v. Commissioner, supra; Estate of Nevin v. Commissioner,* 11 T.C. 59 (1948). In our opinion, Marstan offered the decedent and other qualified corporate officers a surviving spouse's annuity if they remained in the employ of Marstan. The decedent's continued employment constituted his acceptance of the company's offer and served as the consideration for the benefits to be paid under the plan.[10] In essence, the surviving spouse's annuity constituted deferred compensation payable upon the death of the qualified corporate officer. Thus, the surviving spouse's annuity was property procured as a result of the decedent's rendering services to Marstan.

Petitioner contends, however, that because the plan was revocable, it did not amount to a binding contract but was at most a "mere expectancy" that the decedent's spouse would receive a future benefit. We disagree.

Under Pennsylvania law, Marstan's obligation under the plan, unless terminated by the board of directors, was fixed and could be enforced by the decedent's widow at the time of death. See *Sotter v. Coalesville Boiler Works,* 257 Pa. 411, 101 A. 744 (1917).

It was highly unlikely that Marstan's obligation under the plan would be terminated unless the decedent consented to such termination. The decedent owned more than 80 percent of Marstan's voting stock, and in reality, the plan could not be terminated without his approval. Indeed, the plan provides that no amendment could be made which would have an adverse impact on the benefits to be received without the written consent of the eligible officer or his surviving spouse. See note 5 *supra.* Thus, the decedent had

---

[10]Admittedly, since there was little incentive for the decedent to terminate his employment with the company, it was highly unlikely that he would do so.

more than a "mere expectancy" that his spouse would receive a lifetime annuity.[11]

In addition, it was highly unlikely that the decedent would consent to a termination of the plan. The plan was obviously instituted to benefit the decedent, who was the controlling shareholder of Marstan. The plan was not offered to all employees of Marstan. It was tailored to fit the decedent's particular situation, and at the plan's inception, he was the only person qualified to receive a benefit under the plan.

In conclusion, we believe that Marstan was contractually obligated to pay the post mortem annuity benefits to the decedent's widow, since the annuity was procured by consideration furnished by the decedent. Therefore, for purposes of section 2038, the annuity is property in which the decedent transferred an interest during his lifetime to his spouse. See *Estate of Tully v. United States,* 208 Ct. Cl. 596, 528 F.2d 1401 (1976); *Estate of Bogley v. United States,* 206 Ct. Cl. 695, 514 F.2d 1027 (1975).

The fact that the right to receive the post mortem benefits was contingent (from the decedent's widow's viewpoint), in our opinion, is not relevant. Additionally, we deem not relevant the fact that the decedent could not have received any of such payments. The decedent's previous and continued employment with the company was the source of the post mortem payments to the widow, and the transfer of such payments was the potentially taxable event. See *Estate of Porter v. Commissioner,* 54 T.C. 1066, 1080 (1970) (Quealy, J., concurring).

Having determined that the decedent transferred a property interest in the annuity to his spouse, we now must determine whether the decedent retained the power to alter, amend, revoke, or terminate such transfer. Although the plan could not be amended or terminated by the decedent in his individual capacity, he was able to do so as a member of the board of directors in conjunction with the other members. Decedent's ability to amend or revoke the plan in conjunction with other Marstan board members is a suffi-

---

[11]Admittedly, from the spouse's viewpoint, she had no assurance that she would receive the post mortem annuity. However, the focal point is that of the decedent, not his spouse.

cient "power," to compel inclusion of the value of the post mortem annuity in the decedent's estate.

Petitioner places great emphasis on the occasions that the other board members acted in contradiction of the decedent's wishes. However, it is the existence of the right to amend or terminate the plan, rather than the likelihood of its exercise, that is the controlling factor. *Davis v. Commissioner,* 27 T.C. 378 (1956). Moreover, in this case, we believe the ability of the other board members to go against decedent's wishes was largely illusory.

Petitioner cites *Estate of DiMarco v. Commissioner,* 87 T.C. 653 (1986), to support its position. In *DiMarco,* we held that the decedent did not make a taxable gift of a survivor's income benefit pursuant to a plan established and maintained by his employer (IBM) within the meaning of section 2503. The facts in this case are clearly distinguishable from those in *DiMarco.* In *DiMarco,* the decedent was not a controlling shareholder of IBM nor was he an officer or director thereof. Unlike the decedent herein, the decedent in *DiMarco* was not able to alter, amend, revoke, or terminate the IBM plan by which the widow received a survivor's income benefit. In contrast, the decedent herein, by virtue of his control of Marstan, was able to structure and amend the plan to suit his needs. Thus, our holding herein that the commuted value of the post mortem annuity payable to Mrs. Levin is includable in the gross estate of the decedent pursuant to section 2038(a)(1)[12] is not contrary to the holding in *DiMarco.*

A second basis for respondent's determination of the deficiencies is his contention that the annuity constitutes an inter vivos gift from the decedent to Mrs. Levin, such that either an estate tax should be imposed pursuant to section 2035(a)[13] or a gift tax should be imposed pursuant to section 2511.[14] However, neither of these sections applies

---

[12]Each monthly annuity installment is taxable to the widow as income in respect of a decedent under sec. 691. The widow will be entitled to a deduction for the estate tax attributable to the commuted value of the annuity under sec. 691(c).

[13]Sec. 2035(a) provides as follows:

SEC. 2035(a). INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer by trust or otherwise during the 3-year period ending on the date of the decedent's death.

[14]Sec. 2511 provides, in relevant part, as follows:

in the absence of a completed inter vivos gift, whether direct or indirect, from the decedent to Mrs. Levin.[15]

It has long been recognized that a transfer of property is not complete for purposes of the gift tax provisions, and is therefore not subject to gift tax, if the donor retains control over the disposition of the property. Secs. 25.2511-2(b) and 25.2511-2(e), Gift Tax Regs.;[16] *Estate of Sanford v. Commissioner,* 308 U.S. 39, 42-43 (1939); *Burnet v. Guggenheim,* 288 U.S. 280, 286 (1933); *Estate of DiMarco v. Commissioner, supra.* Here, the decedent retained control over his wife's right to the post mortem annuity because he could defeat the transfer by terminating his employment with Marstan prior to his death, by divorcing his spouse, or by agreeing to terminate the plan. Because the decedent retained such control over the property transferred, in our opinion, no gift occurred.

To reflect the foregoing and concessions made by the parties,

> *Decision will be entered for the petitioner in docket No. 38005-84.*
>
> *Decision will be entered under Rule 155 in docket No. 38006-84.*

---

SEC. 2511(a). Scope.— * * * the [gift] tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * *

[15]Respondent also relies on Rev. Rul. 81-31, 1981-1 C.B. 475, for imposition of the gift tax and argues here that we should adopt its reasoning and holding. As we previously stated in *Estate of DiMarco v. Commissioner,* 87 T.C. 653, 661 n. 8 (1986):

"To the extent that this ruling can be read as holding either that a transfer of property can become complete for gift tax purposes by reason of the death of the donor, or that it is permissible to treat a completed transfer of property as an open transaction and to value the transferred property and impose the gift tax at some time other than when the completed transfer occurs, we regard the ruling as being inconsistent with the gift tax statute and the regulations."

[16]Sec. 25.2511-2(b), Gift Tax Regs., provides, in relevant part, as follows:

"if upon a transfer of property * * * the donor reserves any power over its disposition the gift may be wholly imcomplete, or may be partially complete and partially incomplete depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined. * * *"

Sec. 25.2511-2(e), Gift Tax Regs., provides as follows:

"A donor is considered as himself having a power if it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. * * *"